JAMES K. STONE *v.* FIRST NATIONAL BANK OF WARREN, PA.

[Abstract Kentucky Law Reporter, Vol. 4—438.]

**Specific Performance of Contract.**

The party seeking specific performance of a contract must show himself in no default without presenting an excuse that will justify his default. Where there are mutual covenants to be performed, by the parties to an executory contract, at the same time, before the party seeking performance can recover he must allege performance or an offer to perform before he can make the other party liable.

**When Time Is Not the Essence of a Contract.**

The time of performance is not always so essential in the performance of an executory contract for the sale of land as to authorize a rescission upon that ground, but it is incumbent on the party seeking performance of such a contract to show that he has done everything in his power to comply with his contract or that his failure came from some cause over which he had no control and where a good excuse for his failure is shown and he has within a reasonable time tendered performance and no injury has resulted to the other party the chancellor will enforce the contract.

APPEAL FROM CAMPBELL CHANCERY COURT.

November 4, 1882.

OPINION BY JUDGE PRYOR:

This is an action asking the chancellor to enforce the execution of an executory contract between the appellant and the appellee evidencing the sale of some real estate in the city of Newport. By the terms of the contract the appellee agreed to deliver to the appellant, within 30 days, a good and sufficient warranty deed to the property, and at the same time of the delivery of said deed the appellant agreed to give his notes for the purchase-money.

The appellee in its petition avers that since the — day of October, 1879, it has been ready, able and willing at all times to comply with the contract in every particular and so notified defendant in October, 1879, yet the defendant failed to execute his notes and mortgage, and before this suit was instituted the appellee tendered to the appellant a deed with covenant of warranty which he declined to accept, and again he tenders the deed. There was a demurrer to this petition and the demurrer overruled. The pleading is defective and the demurrer should have been sustained. It is evident that the execution of the notes was dependent upon the execution and delivery of the deed within the time provided by the contract, and an averment that the plaintiff was able and willing to perform his part of the contract of which the defendant was notified is not sufficient. It must be averred that the plaintiff delivered or tendered the conveyance within the time contracted for to the defendant, and the failure of the latter to comply, or when time is not of the essence of the contract some excuse or reason should be given why the plaintiff was unable to comply. The general rule is "that the party seeking a specific performance must show himself in no default without presenting an excuse that will justify his default." Here were mutual covenants to be performed at the same time, and before the party seeking performance in this class of cases can recover he must aver performance or an offer to perform before he can make the defendant liable. *Pollard v. McClain,* 3 Marsh. (Ky.) 24; *Campbell v. Harrison,* 3 Litt. (Ky.) 292.

The testimony in this record shows that the party who is seeking relief failed to comply with his contract by making or tendering a general warranty deed within the thirty days, and that he could not have complied for the reason that his title was defective. It appears from the pleadings and proof that the appellee was to obtain from Mrs. Johnson a relinquishment of her contingent right of dower in the property conveyed, and that this was the obstacle in the way of concluding the contract by the execution of a deed at the time it was

entered into. Whether Mrs. Johnson was entitled to dower or not is an immaterial inquiry in this case as both parties regarded her as having this inchoate right and the appellee undertook to obtain the relinquishment, and authorized its attorney to obtain it in order to perfect its title. The attorney informed the appellant, as the latter says in his testimony, that he could not obtain the relinquishment and after this conversation a second conversation was had, at the clerk's office in Newport, in which he was again told by the attorney that Mrs. Johnson would not convey, and it was then understood that the contract was off and that the appellant would continue to occupy the premises as a tenant. The substance of this conversation is not only established by the statements of the appellant and his attorney, but by the attorney for the bank. The appellant was in possession of this property at the time of the sale, having rented it from the vendor of the appellee, and agreed to continue the rental until the expiration of the year, after being informed by the attorney that he could not obtain the relinquishment. Taking the conversation as all the parties understood it, the attorney for the bank as well as the attorney for the appellant, and if a sale had been thereafter made by the bank for a better price, it is not plain that the purchaser would hold with notice even of the previous sale of the appellant. The attorney for the bank said to Stone "The trade is off. Mrs. Johnson declines to relinquish and I don't intend to run after her any more." Stone remarked, "It is all right, I can vacate after the first of January," and the attorney for the bank responded, "Very well, we have a purchaser at a better price, but how about the rents?" Stone responded, "The rent can continue as before." Besides the appellant has invested his means in other real estate, and upon the faith of the abandonment of the contract by the parties in interest. The attorney for the bank says that after the 30 days and after the conversation held at the clerk's office he obtained a deed from Mrs. Johnson and notified the appellant, who made no other excuse than that his (appellant's) wife would not relinquish her dower in the property the appellant had agreed to mortgage to the bank to secure the purchase money. This conversation the appellant denies and if established does not alter the rights of the parties. The property sold was a planing mill. The appellant was anxious to invest in real estate and to engage in business, and while time is not always so essential in the performance of an executory contract for the sale of land as to authorize a rescission

upon that ground, yet, a strict compliance in point of time must often be of great importance to those who desire to engage in a permanent business, or place their money in real estate as an ordinary investment. It is always incumbent on the party seeking the the performance of an executory contract for the sale of real estate to show that he has done everything in his power that a man of business would do in order to comply with his contract, or that his failure originated from some cause over which he had no control. It is true that he may be without an excuse, and opposite facts by his conduct and action may show that he still regards the contract as binding. If nothing had been said with reference to this deed or relinquishment of Mrs. Johnson, and the appellant perfecting his title in a reasonable time had tendered the deed, and no inquiry had resulted to the appellant, the chancellor would have enforced it.

The party offering to comply in such a case must show, however, that he has all the while regarded the contract as subsisting; if not, he will be denied relief. He will not be allowed to say on one day the contract is off, and on the next that it is in full force; such a rule would enable the party in default to comply if to his interest, and if not, to abandon the contract. The mere failure to comply with an existing contract like this in point of time without regard to the circumstances connected with it, is not sufficient to authorize the chancellor to deny the relief but to make the petition good, The excuses, which are the circumstances connected with the failure to convey, must be stated. The mere delay for a few days in its execution, and the vendee not injured by it, is no ground for denying to the vendor the equitable right to enforce it. Is that the case here? The appellee maintains that its attorney had no right to rescind the contract. In this we concur; nor do we mean to say that the attorney assumed such a responsibility. He was selected by the appellee to perfect its title and through him alone was the appellant to know whether he could or could not obtain a title. Having been informed that the title could not be obtained, the appellant certainly had the right, after the time had expired in which to comply, to regard the contract as at an end, and to look for other investments of his means. It may not have been the fault of the vendor in an equitable view of the case that caused it to make default, but when the vendee is informed that the contract is ended and no title can be made, it is too late then to revive the contract

so as to claim the equitable relief sought here. The attorney of the appellee was the agent to examine and perfect the title that the contract might be fully executed. There was no one else in this state representing the appellee. This authority is not denied but admitted by the pleadings and shown by the proof, and in our opinion the relief asked should have been denied. The cases of *Doss v. Cooper*, 2 J. J. Marsh. (Ky.) 409; *Henry v. Graddy*, 5 B. Mon. (Ky.) 450; *Cotton v. Ward*, 3 T. B. Mon. (Ky.) 304; *Tyree v. Williams*, 3 Bibb (Ky.) 365, 6 Am. Dec. 663; and *Woodson's Admr. v. Scott*, 1 Dana (Ky.) 470, all sustain the views herein presented.

The judgment is, therefore, *reversed* with directions to dismiss appellant's petition.

*A. Duvall, Helm & Bigstaff, for appellant.*

*Wm. Lindsay, John S. Ducker, for appellee.*